Yeldon, excuse me, Yeldon v. Fisher and DeRiso. Good morning, Mr. Romberg. Morning. May it please the court, John Romberg for Seton Hall Law School Center for Social Justice, representing plaintiff appellant Willie Yeldon. First, I apologize that you have me rather than my students. They have graduated. One is clerking on the district court, and the judge he's clerking for didn't think it would be appropriate for him to appear. The other is working for a large New York City firm who, unfortunately, didn't think it feasible for her to appear. But there are four central issues on appeal. First, was there a valid stipulation of dismissal consistent with the plain language of Rule 41A? Second, if there was a valid stipulation of dismissal, should it have been vacated under Rule 60B? Third, did the district court fail to fulfill its legal duty of inquiry to assess Yeldon's competence under Rule 17? And finally, was the notice of appeal timely under the prison mailbox rule, an issue I'll address last, because it turns on the other issues, understanding it in full? It would be a great offense if we ask you to address it first, since it has to do with whether we can even decide the case that you want us to decide. I would take no offense. So first, unless Your Honor decides otherwise, under Rule 41, the question is, is there a valid stipulation of dismissal at all? And the plain language of Rule 41A1A2 states that in order to be a valid stipulation of dismissal, first, all the parties have to sign the document, and bracketing that for the moment. But the second essential characteristic is that the document must be filed by the plaintiff. The plaintiff can't authorize an agent to file it? If Ms. Gilles, his attorney in the Northern District, had filed it in the Western District, then we would have a far different case. It might. Does the attorney, on his behalf, authorize the defendant to file it? Is there something in the rule that says that either the incarcerated plaintiff or his lawyer, who does not reside in the Western District of New York, has to travel to Buffalo or someplace to put it in the hands of the clerk? Or is it permissible for a party and or his attorney, on his behalf, to authorize someone else to execute the physical filing? Your Honor, it can be mailed. And so there's no question if. Well, I didn't ask that. I mean, I suppose it could be mailed. The question is, is it permissible for one attorney to say to his or her adversary, can you just bring this down to the courthouse for me? And the answer is no, Your Honor. The rule says the plaintiff must file it. And this is not a mere. But we have already gotten past that. Because you told me that his lawyer could file it on his behalf.  Could a pro se litigant just ask a friend to take something down to the courthouse? The question is if the plaintiff files it. I'm sorry. I asked the question, could the plaintiff authorize a friend who is not admitted to the bar to bring something to the courthouse and file it on his behalf? Yes, because that would be the plaintiff filing it. Could the plaintiff authorize an enemy to take it to the courthouse, or an adversary to take it to the courthouse? Yes, if the plaintiff is authorizing that party as an agent of the plaintiff. Well, what makes the person an agent other than the fact that they were asked to do something on behalf of someone else? I mean, in other words, I'm guessing that it's actually not that uncommon where people are both represented by counsel. And there's a whole bunch of documents, and they're all signed in some way at a closing type thing. And then somebody brings the package down to the courthouse, not necessarily the plaintiff's lawyer or the plaintiff herself. Somebody else who's connected with the case shows up and puts it into the courthouse. I mean, is there anything in this record that suggests that the plaintiff's lawyer objected to the filing of this in the Western District, or didn't want it filed in the Western District? Yeldon did not have a lawyer in the Western District. Had a lawyer in the Northern District. Right, in the Northern District. And we've already passed the point of your agreeing that that lawyer could have mailed it to the Western District, or could have brought it to the Western District, and you wouldn't have a problem. Your Honor, I misspoke. If that lawyer had represented him in the Western District, then yes. Why is that so? Why couldn't the plaintiff say to a friend, look, I don't want to just mail this to the courthouse. I don't trust the mails. But I know you're going to be in Buffalo next week. I need this to be filed in Buffalo. Can you bring it to the courthouse and file it on my behalf? Is there anything unlawful about that, or anything that would mean it wouldn't be effective under Rule 41, because it wasn't filed in the Western District by an attorney who had entered an appearance to represent the plaintiff in the Western District of New York? I may not convince you, Your Honor, but I'm asking you, what would be the rationale for that? Here's the rationale, that Rule 41A1A2, it does not require any judicial approval or review. If there is a second such filing, it automatically makes the dismissal with prejudice. There are important consequences to the filing. Of course there are. Of course there are. There are consequences to the filing of anything. But the filing is a ministerial act, is it not? I mean, it would be different if there was some indication of fraud. If it wasn't really signed, if there was some indication that no one wanted this filed, and somebody purloined a signed document that was not intended to be filed from the person who had signed it and then thought better of it and snuck it to the courthouse. But there's no such indication here. And what you're telling me is that a Rule 41 stipulation, unlike, as far as I'm aware, any other document, needs to be filed personally at the courthouse. And of course, you've already said it doesn't, because it could be mailed. I suppose it could be couriered, right? So some guy who works for FedEx can bring it to the courthouse, but an officer of the court who has been tasked by an adversary with filing it in the court can't? Unlike any other rule I'm aware of, 41A specifically says the plaintiff must file it. And the reason it says the plaintiff must file it is because if the defendant files it, it has very serious consequences. The other requirement of Rule 41A is that it must be signed by both parties. As you know, there's a dispute. The record does not contain any signature. Defendants have moved to introduce the document that was not before the district court, which certainly it appears to have been signed, but that is not before this court. Wouldn't the stipulation be effective if it was entered in open court in front of a judge, regardless that the settlement then becomes effective? Yes, that is the only argument the defendants have raised, is that the single exception this court has recognized to what it has said is otherwise the strict language of Rule 41A, including plaintiff filing, is that this court in rule recognized that if in open court a plaintiff made an intelligent waiver that was voluntary, clear, explicit, and unequivocal, that's sufficient. That's what defendants argue. And that is not present here. First of all, the open court discussion was in the northern district. And whether it could have been tantamount to a stipulation in the northern district, arguably. But a discussion in open court in the northern district. Well, the discussion in the northern district could conceivably have been tantamount to a stipulation in the northern district, but it could not possibly be tantamount to a stipulation in the western district. Why? I mean, as part of a global settlement, why couldn't he have agreed to dispose of both cases? He arguably agreed in the northern district to a term that included the dismissal of his western district. But what he didn't do was stipulate in open court in the northern district in a way that would automatically be a stipulation of dismissal effective in the western district. So under Rule 41A, there's no dismissal. Defendants can argue that a binding term of the northern district settlement is the dismissal of the western district case, but that's not the same thing as a stipulation of dismissal. Can I ask you about the competence issue? Is there anything, what in the record indicates that Mr. Yeldon did anything whatsoever in front of the judge that would lead the judge to question his competence? There is certain behavior in the record that might arguably lean in that direction, but even if there were, that would be totally irrelevant. This court in Ferelli essentially established two different buckets. One is the litigant's behavior in the litigation, even if bizarre, is totally irrelevant. The judge's subjective perception of that behavior, the judge can undertake a Rule 17 inquiry, but there's no duty. There's no legal duty of inquiry. On the other hand. Is there the converse? What if the person acts in a way that gives the judge utter confidence in his competence, like correcting the judge about the details of what the lawsuits are and which one is in which district and so on? The second bucket is whether there exists outside the lawsuit objectively verifiable evidence that a mental health professional agency or court has made a determination of mental illness and treatment for mental illness, suggesting incompetency. And is there any of that? I mean, what he is confined as is a habitual sexual offender. Is there anything about that designation that suggests that he's not capable of understanding the proceedings and making intelligent decisions? Does it prove it? No, not to prove it. Does it even suggest it? Is there some implication that somebody who is confined under this somewhat hypothetical, I must say, I mean, it's the kind of legal fiction that enables the state to lock somebody up forever. But it seems to me there's nothing about that diagnosis that would suggest for a second that somebody isn't perfectly competent to make decisions about, to understand and make decisions about a court proceeding. It may play out that that's true. The fact that someone is subject to the extraordinary restriction that without a crime, they're confined because they can't control themselves in society, such that society is willing to tolerate their presence, suggests that their inability to control their conduct may well raise an issue. Is there anything about that diagnosis that suggests they're unable to control their impulse to sign stipulations in court? There's no such thing, right? I mean, has any court, I mean, he's had lots of other court proceedings, right? Including criminal proceedings. Was there ever any indication in any of those proceedings that his competence was an issue? But we don't know, and frankly, the district court didn't know. The legal duty of inquiry is, as the Powell in the Third Circuit expressly adopted this court's decision in Forelli, and what Powell holds is, if there is some evidence suggesting possible incompetence, then there's a duty of inquiry. Ordinarily, and it may well have happened in this case, and we'd suggest might well happen on remand, the district court undertakes a minimal inquiry and says, you know what? Looking at your behavior, looking at these verifiable objective documents, I don't find there's any issue of competence. Maybe the district court says, I don't know, I'll have an evidentiary hearing. Maybe after the evidentiary hearing, the district court says, you know what? I find you competent. All of those would be subject to review for abuse of discretion. There may well not be any issue of competence, but what's required is a legal duty of inquiry to make some kind of discretionary decision, which the district court entirely failed to do here. That's true in any circumstance. It's true in any circumstance if the district court doesn't make any, if there's objectively verifiable evidence suggesting possible incompetence, and the district court says nothing. So the question before us is whether this kind of sex offender commitment constitutes what exactly? Constitutes evidence that someone might be incompetent to represent himself and his own interests in court? That's the issue. That's what we have to decide, is whether this kind of commitment is the kind of thing that triggers the rule that you are relying on. Precisely, Your Honor. The extraordinary restriction which you've read. Why should we decide that it is? I mean, I grant that he's restricted, and he suffers extraordinary legal disabilities that, as far as I can see, are not related to his intellectual functioning or his ability to make decisions of the sort that are relevant to competence to proceed in a court proceeding. Tell me why I'm wrong. What is it about that, the fact that society thinks he needs to be locked up or he might commit some form of sexual offense again, relates to competence? Again, we don't know. The district court didn't know. The district court had a duty of inquiry, which could have been very- No, no, the duty of inquiry is triggered, we've established, you agreed, by some evidence of a certain kind of mental health diagnosis. We know what that mental health diagnosis or condition or commitment is about. And what I'm asking you is, why should I believe that the restrictions that are placed on his liberty, severe as they are, out of a concern about his ability to control certain sexual behaviors, relates in any way to competence? Because the issue is, that's what triggers the duty of inquiry. So what is it about that, that makes one think that a person might not be competent? Your Honor is, of course, absolutely right about the legal question, but we know that it's a matter of confinement for a sexual offense. The district court didn't know, the district court didn't make a discretionary decision. All the district, what the district court knew was that he had been civilly committed, because he was incapable of living safely and conducting himself in the world. And what we argue is that that is enough to put some kind of burden on the district court. The district court did not know what kind of institution he was in, or why he was there? Knows he's in the Central New York Psychiatric Center, and that there are six different reasons why someone might be committed, and what all it might have taken. If the district court had said, send me the reason you're there, and the district court said, I don't find there to be a Rule 17 issue here, I probably wouldn't be standing in front of you. But the district court- Well, maybe you're very good coming up with arguments. Maybe you'd be here anyway. Don't be so quick to say you'd concede that. But all right, I got it. Thank you, I understand your argument. And then, under Rule 60B, quickly, if, in fact, there's a question, Yeldon says that his Northern District Attorney, Gallels, was never authorized to settle, or even represent him, or do anything in the Western District, and yet, she apparently did both participate in negotiating, and drafting, and signing the Western District Stipulation of Settlement. And under 60B1, this Court in Gomez held that if there's any colorable question about attorney authorization, there should be an evidentiary hearing about what the attorney did. Here, defendants argue that Gallels, well, she may have done something wrong in the Western District, but it's not an issue. Why? Because he ratified what she did, because he himself signed the document. Ratification, however, requires that he knowingly authorize the previous decision, even if it wasn't originally justified, that he later knowingly agree. And his... What did she do in the Western District before he ratified? I thought there was a discussion in the Northern District about the terms on which the case would be settled. And one of the issues that arose was that the other side wanted to dispose of both cases at once. Then there was a discussion of that with the magistrate judge. Now, none of that's taking place in the Western District. That's a discussion about the terms on which this settlement is going to be. And one of the terms comes to be, you'll dismiss the case in the Western District. That's fully explained to Mr. Yeldon. He agrees to it. Now, what happens previous to his ratification that was unauthorized behavior in the Western District? It may not surprise you, Your Honor. I have a different take on what happened in the Northern District. What happened was that apparently Ms. Gallel's negotiated a settlement that encompassed both the Northern District case and the Western District case. Yeldon... Right, that was part of the negotiation. And he understood that at the time. He did not understand that at the time. He repeatedly, in his papers and his discussions with us, he says, I'm in the Northern District. I'm settling a Northern District case. I'm before a Northern District judge with a Northern District attorney. This has absolutely nothing to do with the Western District. I had no idea that anything was going on with the Western District. No, no, no. Going on with the Western District is a different question than some unauthorized behavior by the lawyer. Lawyers negotiate things all the time. Then they come back to their client and says, this is what the deal is that's on the table now. I don't know what rule requires a lawyer not to talk about anything in the Western District. The problem isn't that she talked about it. The problem is she apparently signed the Western District stipulation on his behalf. And there's obviously a factual dispute. Maybe she will say, I talked it over with him. He authorized me to represent her there. He says she didn't. We need an evidentiary hearing. So we have to... The Western District stipulation. He signed it. And what he says, and the Western District had absolutely no evidentiary hearing, said, I adopt the Northern District here. He says, I had no idea the Western District case was involved. Judge Baxter... We have the transcript of the discussion with the magistrate judge in the Northern District, don't we? Yes, we have the transcript. And what the transcript shows is that the magistrate... If you go in thinking both cases are on the table, then the magistrate judge did an excellent job of going through each. If you go in and recognize that Yeldon had no idea the Western District case would be dismissed, you can see why he didn't understand that the magistrate judge says, the Northern District case, that's gonna be dismissed without costs. Now, your Western District case, they're looking. They want you to dismiss that. Yeldon thought that the judge was giving him advice about his Western District case. And then later on, Magistrate Judge Baxter was saying, look, your Western District case, it's gonna disappear anyway because you haven't filed objections to the magistrate's report. And Yeldon goes on at length. He says, yes, I did. I talked to the clerk in the last couple of weeks. That case is still alive. He says, it's still good. He's arguing the Western District case is still good, which would be totally irrelevant if he knew that his Western District case would still disappear. Yeldon... But there's discussion on the record in front of him in which one of the lawyers says, I'm not the attorney of record in the Western District. So the stipulation is gonna have to be entered and signed by the attorneys of record in the other case. How could it not have been obvious to him that this stipulation covered both cases? As the hearing is ending and the lawyers are talking amongst themselves about how to effectuate the filing of the stipulations, that statement is made. And you have a... He's present for that. Shackled and in great pain. And would that be relevant to an evidentiary hearing about whether he understood? Certainly. Is it enough to show clear, unequivocal, explicit, voluntary, intelligent waiver? I'd argue no. Is it relevant? Absolutely. And certainly an evidentiary hearing might turn out either way. But what we don't have here is proof. So we don't even need a hearing proof that he clearly, voluntarily, explicitly, unequivocally agreed to release his Western District case. So you're well, well, well over your time, as you can see. And the government will have plenty of time to respond. But would you give us one minute, please, as to why we have appellate jurisdiction and why the notice of appeal is not untimely? Yes, very briefly, Your Honor. It's depriving us of jurisdiction. Yes. And I'm sure the government will address that and then you can use your two minutes on rebuttal to respond to what they're gonna tell us. Yes. Three reasons. First, forfeiture. The government argues that the compliance with the appellate filing mailbox rule is jurisdictional. The Supreme Court in Hammer held it is not jurisdictional. And this court in Henry Benedict held that claim processing rules that are not jurisdictional are subject to equitable defenses. The other co-defendant moved- They'll agree that timeliness is jurisdictional. No, timeliness under the statute, under 2107, is jurisdictional. Timeliness under a rule is not jurisdictional. Hammer overturns Bowles and explicitly says that the Second Circuit, among other courts, was misled. Why? Because the Supreme Court says timeliness is mandatory and jurisdictional. But in Hammer, which is 138 Supreme Court, at 21 says, we called it mandatory and jurisdictional. It's not. Statutory, yes. When it turns on a rule, like the prison mailbox rule, it's not jurisdictional, merely claim processing. This is not jurisdictional. It's been forfeited because there was a motion for the notice of appeal to be untimely, made more than a year before a separate, different ground why the notice of appeal was untimely. Also, under Rule 58, that there's a requirement that there be a separate judgment for any order except a few narrow specified ones. One of those specified ones is Rule 60B. But here, the motion, Yelden's motion, repeatedly and explicitly says he's looking for relief under 41A. And it's not that 41A itself is a basis for relief. But what Judge Baxter in the Northern District said is, I'm gonna resolve this under 60B. And in the alternative, I recognize that he's saying there's no valid 41A dismissal. So in the alternative, I'm also going to construe this as a motion to oppose enforcement of the settlement to recognize that there's no actual valid dismissal. Two separate grounds. Because analytically, the first question is, is there even a dismissal compliant with 41A? If there is, then there's a separate question of whether it should be vacated pursuant to 60B. He raised both of those arguments. The judge in the Western District expressly adopted the reasoning and the analysis of the Northern District, which recognized those two separate arguments. There's no separate judgment here, despite the fact that there's an argument that there's no valid stipulation of dismissal under 41A. And then the separate argument that if there is, it should be vacated under 60B. Therefore, his filing is timely. Finally, one sentence. At most, there's a dispute of fact. We've explained in our briefing that defendants' arguments should be remanded if the courts have held, if there's even a scintilla of doubt about compliance with the prison mailbox rule. Thank you. You've reserved two minutes for rebuttal. Mr. Romberg. Mr. Hitsis. Good morning, Your Honor. With this court's permission, I'd like to start with our motion to dismiss, right where we just left off. We stand by our argument that this is an untimely appeal. Mr. Yeldon had until February 23rd to file his notice of appeal. You can consult page 221 of the appendix. There is an envelope postmarked February 27th, metered mail of 67 cents. In our motion, we produced an affidavit from a mailroom employee at CNYPC, describing the process by which a patient would go about getting his mail metered at CNYPC, and critically here, it is the patient that fills out that request. It is the patient who signs the date in the upper right-hand corner, says where it's going to, and we have a request dated February 27th, addressed to the district court, that is an exact match with the envelope that we received, it's approved for 67 cents. Our mailroom employee searches through the file, finds no other postage requests in the vicinity of that timeframe. If you went to the district court docket, you would find no other envelopes metered for 67 cents within that timeframe. I understand that my adversary says  because in his affidavit of service, he says that he served it on February 21st. Now, there's a question whether even a conclusory statement about serving would be sufficient under the mailbox rule, but if it is, that is the bare minimum that it would take to trigger the mailbox rule. Basically, what this argument would translate to then is that the bare minimum to comply with the mailbox rule would also immunize against any kind of attack that under the mailbox rule, the appeal was nonetheless timely filed. In cases of this sort, what we need to do is to either formally remand it to the district court for an evidentiary hearing, or decide that we will undertake that factual inquiry, which we would typically do by referring it to a district judge or magistrate to conduct a hearing, develop the factual record, make a report and recommendation to us as to what kind of factual determination we should make. And we should be undertaking this kind of inquiry pretty much in every prison mailbox case where the prisoner has something that looks a little suspicious as to when it was dated. And that's the way to run this railroad. That would be the implications of my adversary's argument, Your Honor. We say that there's no issue of fact because he's giving- No, you say there's no issue of fact because you think we should credit your evidence and your affidavit of your prison employee and discredit what the appellant says. That seems to me to create an issue of fact. You're saying this is like a summary judgmentable thing, that the fact that he swore to this, that he did this in a timely way, we just disregard? When they're not giving any kind of elaboration,  To comply with the- We'll find that out when we have him cross-examined in an evidentiary hearing. And maybe it will turn out that he breaks down and says, no, I admit it. I didn't mail this until the 27th. Or he gives something that's totally incredible. Or he describes exactly what he did and that turns out not to suffice. And then we can make some kind of factual finding. But I don't see how we get to just say no issue of fact when someone has sworn that something happened on a date that looks like maybe it didn't. Well, I think it's also important to take notice of the juncture where this is happening. This is on a motion to dismiss. At this stage, Mr. Yeldon is counseled. He could have easily put in something that contradicted our specific factual scenario. For example, we're saying- Do you need to take some discovery or something to do that? How does he know what your procedures are? I mean, he knows what he did or claims he did. He doesn't know what else might have gone on in the mail room. But Your Honor, he has our motion to dismiss and he has the assistance of counsel. They could have gone to Mr. Yeldon, said here's what they're alleging. You tell us your side of the story. And he could have presented a competing affidavit telling his side of the story. And we simply don't have that. His side of the story is I did it on the 21st. His side of the story is I served it on the 21st. We explain- What do you think he did on the 21st? He brought it to somebody, I guess. That's the clear implication. And I don't know what happened after that. But at any rate, that's just a question of if there's an issue of fact, we need to resolve the issue of fact, I suppose it goes to our jurisdiction. That's correct, Your Honor. Rather than accept his representation, which is usually all we have in these prison mailbox cases, and then go on and decide the case in your favor and be done with it. That's correct, Your Honor. Because it goes to our jurisdiction. Now, I'd like to address that point as well, Your Honor, about jurisdiction. My adversary brings up the Hamer case. I would direct this court's attention to Part 2B of the Hamer case. That part of it centers on the fact that the Seventh Circuit there was interpreting a purely judge-made rule, had no anchoring whatsoever in the statute. The mailbox rule, on the other hand, is an interpretation of what it means to file a notice of appeal under 2107. Houston v. Lack, the Supreme Court case, which first articulated the mailbox rule, recognizes it as much because one of the defenses there was 2107, and they said that the mailbox rule is consistent with 2107. So we're not bringing up the mailbox rule for the mailbox rule's sake. We're saying that in the context of a prisoner filing a notice of appeal. He has to comply with the timeliness in order for us to have jurisdiction. That's correct, Your Honor. That is a jurisdictional rule because it is in the statute. And the only way, and clearly he didn't, if you look at the face of the statute, it's only by virtue of the prison mailbox rule that gives him a certain benefit by interpreting the statute a particular way. That's correct. So compliance with that is part of the jurisdictional obligation. Yes, Your Honor. The mailbox rule is an interpretation of that statute in the limited context of pro se prisoners who wouldn't be able to go to the court on their own. It's not like the court or the federal rules created an obligation for him. It's the federal rules create a benefit for him and help him comply with the jurisdictional requirement. That's why it's jurisdictional. That's correct, Your Honor. And I'll add, just because I know it's one of the issues that we were directed to brief, the defendants don't dispute that somebody in Mr. Yeldon's position, a patient at a psychiatric hospital could conceivably avail himself of the mailbox rule. We just argue that with or without the mailbox rule, he didn't do so here and that that's a jurisdictional issue that we could raise at any time. Right, and that is because the rule refers not to a prison, but to an institution. And it refers to institutionalized persons. And the advisory notes go to, I think, extraordinary ways to avoid the word prison, which makes pretty clear that they intend institutions to be construed broadly. That's correct, Your Honor. And in the course of researching that issue and eventually conceiving that it would apply theoretically, we discovered that at CNYPC, they have these detailed mailing procedures where we can verify when they requested the mail to be metered and when, and that's what gave rise to our motion to dismiss. Now- We wouldn't be here if he had timely made the request, which presumably entails making the request and handing the notice in an envelope to be mailed. And the meter, the postage meter or the envelope showed it got metered three days later. We wouldn't be here having this discussion. That's correct, Your Honor. Because he would have gotten it into the institution's mailbox. Oh, absolutely, Your Honor. And we would say that the postage request, because it is the patient who fills out that date, so if that was dated on the 22nd or even on the 23rd, the deadline, but it wasn't postmarked until the 22nd, oh, I'm sorry, the 27th, then we wouldn't be making a motion to dismiss. We would concede that that is compliant with the mailbox rule. But that's- He got the request in in time. That, in that case, he would have gotten the request in in time. And they run their mailbox. That's correct, Your Honor. But here, every date on there is the 27th, four days after the deadline. And it's an exact match with the envelope that the district court itself received, which is why we're here making our motion. Now, if I may, Your Honor, if this court disagrees with the timeliness issue, this appeal still lacks merit. I think during my adversary's portion of the argument, you got to the heart of the issue, which is whether or not this settlement was knowing and voluntary. There are two components to that. The first is the written settlement itself in the Northern District. That- I have a question I wanted to ask. Your adversary said that the magistrate judge did not know the reason why Mr. Yelden had been civilly committed. Is that true? I don't know one way or another, Your Honor. Unfortunately, I thought about that as my adversary said it. And I suppose we could scour the record and maybe there would be something in one of the earlier filings saying that he is at CNYPC as part of the sex offender treatment program, but I don't know one way or another right now. I would say, however, that regardless, what we're talking about is whether or not the district court abused its discretion. And so what the district court is faced with, this goes to the competency issue, is a patient who has CNYPC on his return address when he's making a filing. And it's clear that Mr. Yelden is arguing that that in and of itself would be sufficient to trigger this duty to inquire into competency in every single case. And we argue that that's completely inconsistent with Forelli. In Forelli, this court noted that district courts are already overburdened with pro se litigation and that it wasn't going to articulate a rule to overburden them further. This is a narrow duty of inquiry. And what Mr. Yelden is arguing is that in a broad number of cases, his rule would be status-based. Basically, everybody who is filing a lawsuit from CNYPC would need some kind of duty of inquiry and the court would be abusing its discretion if it didn't conduct the duty of inquiry. I'll add, we argue that the standard of review is abuse of discretion here. I understand that in their brief, they say it's de novo, but one doesn't determine whether a guardian ad litem is necessary under Rule 17 unless that person is incompetent. So a competency inquiry is the same thing as a Rule 17 inquiry. And that rule is just far too broad. If that was the case, courts which are already flooded with this kind of litigation would be shorn of their discretion to view for themselves. Mr. Yelden, as was pointed out, has been in any number of lawsuits, any number of legal proceedings, there has never been an adjudication of incompetency in any of them. Of course, had there been, that would be judicially noticeable. I will add that if either of the parties had any kind of reason to believe that he was incompetent, that would be something that we could bring to the court's attention as well. So the information doesn't have to come from Yelden himself. He doesn't have to move to be declared incompetent. However, it's not uncommon for it to happen in this context. For instance, here, Mr. Yelden did move for counsel and he said he's at CNYPC, he wasn't sure if he would be able to handle this himself. Had he accompanied that, maybe with some psychologist notes, this would be a completely different case. But those notes are the kind of medically verifiable evidence that Forelli was talking about. The duty of inquiry is a duty to inquire based on the evidence that the district court has. It's not a duty for the district court to go searching for evidence that it doesn't have. And for that reason, we would ask this court to reject categorically this broad-based rule that every time a district court receives filing from a pro se litigant who happens to be at a psychiatric institution, that they have to stop what they're doing and conduct a duty of inquiry. The duty of inquiry attach. After all, in this case, I suppose if the rule were as broad as you say the other side is advocating for, it would come at the very beginning. But by the time all the important events take place that are at issue in this case, he already has counsel, right? I mean, that's where all this discussion is of the settlement takes place. He has an attorney representing him. And that attorney would be under a duty as an officer of the court to bring to the court's attention any doubts that she had about her client's competence. Would she not? I believe that that would be the case. If any party has a doubt as to another party's competence, that's something that needs to get brought to the court. But your question raises another interesting point. If we were to assume that there was a duty of inquiry here, we would say that that duty of inquiry attaches only from the point of the Rule 60B motion onwards because the duty of a sua sponte inquiry necessarily has to happen in real time. As I understand my adversary to be arguing, he is saying that the district court in the Western District abused its discretion by not sua sponte inquiring into Mr. Yeldon's competence in that earlier Northern District case. But he, of course, was in front of the Northern District. The Northern District found no problems, or at least implicitly found no problems with his ability to settle the case because he didn't appoint a guardian ad litem. So if there's any problem with his competency, that should have been directed in an appeal from the Northern District aspect of the settlement. Thank you. Thank you. Mr. Rauch. Thank you, Your Honor. May it please the court, Robert Rauch for defendant Apolli D'Aressio. We certainly request the court affirm the decision of the lower court in its entirety. With regard to the arguments regarding setting aside the stipulation of dismissal, we certainly submit that the proof in this record reflects this was reached knowingly, intelligently, competently in court with assistance of counsel. On the record, I have nothing further to add to the co-defendant's arguments. I will adopt those arguments with regard to that issue. I would submit there's simply no basis on the record to set aside this in-court discontinuance. I would simply add with regard to my client, Dr. D'Aressio, that an additional issue that the court can consider is whether there is merit to the underlying claim. Under 60B, a party cannot have leave from a judgment if there is no merit to their underlying, I'm sorry, cannot have leave if there's no merit to their underlying claim or defense. Here we have a decision, we're going back to 2011 now. This case has taken a bizarre procedural trip up and down the courts, but we have a decision back in 2011, which is still the law of the case at this point, dismissing his claim against Dr. D'Aressio based in medical malpractice and Eighth Amendment due to not just failure to state a cause of action, but expiration of any applicable statute of limitation. That's the decision that is still standing. We also have the matter that he never served any response to the report and recommendation of the magistrate judge once it went back down. Even if this court were to set aside the discontinuance, we're put back in this position where it still would automatically result at some point in this report and recommendation being upheld. For simple matters of saving time, money, and judicial economy, the court should consider the lack of merit of the underlying claim and simply deny the appeal on those grounds as well. Unless there are any further questions, I'll simply defer to my brief. Thank you. Mr. Romberg, you have two minutes. Thank you, your honor. So first on the timeliness part, the first reason why it's timely and all the other arguments don't matter is that because Yeldon's motion raised both the 60B issue about vacating dismissal if it existed and raised is there a valid dismissal. He repeatedly says there is no, the dismissal under Rule 41A is invalid and void and further, I object under 60B. And Judge Baxter's analysis tracks exactly the same thing, says I look at 60B and in the alternative, I assess under 41A whether there's a valid dismissal. It raised both the 60B and 41A issues. 41A conceptually is really, is there a valid stipulation of dismissal? Therefore, under Rule 58, the clock, there's 180 days to file, he timely filed. All the other timeliness issues are irrelevant. Second, under Hammer, the question is, ultimately, of course, 2107 is the statute and compliance is jurisdictional. But if you read Hammer, what matters is what's the dispute? Is the dispute compliance with the language and strictures of 2107? Or is the dispute is, did he comply with the mailbox rule and with Federal Rule of Appellate Procedure 4? If the dispute is about compliance with a federal rule, which cannot alter jurisdiction, if the dispute is about compliance with the federal rule, whether it's restriction or whether it's a federal benefit, then under Hammer, it's not jurisdictional. The Supreme Court, for decades, it said it was, but in Hammer, it said, oops, we're wrong, and we misled courts, including the Second Circuit. So you'll obviously have to take a look at that, but you don't need to because of the first reason, that he moved both under 41A and 60B. He said there's no valid dismissal and the alternative, if there is, vacate it. I just want you to follow that so I understand it. So because he argued under Rule 41, what follows from that in terms of, because was there not a judgment entered in the first place? There was not. There was never a judgment. There was just a stipulation. There was a stipulation, and then in his motion for reconsideration, in his motion to set it aside under 41A and 60B, in his motion for reconsideration, there was no judgment entered, and his notice of appeal was unquestionably timely within the 150 plus. So there's never been a judgment entered by the district court in the Western District? Correct. Neither at the first, in pursuance to the original stipulation, or later in response to the orders that were entered on the Rule 60 motion and his effort to withdraw the Rule 41 stipulation, never has there been a judgment? That's definitely true about the motions, which makes his appeal timely. I'm virtually certain about the initial 41A stipulation, because once it's filed, because it has to be filed by the plaintiff, I would argue, then there is nothing further for the court to do. In the Northern District, it was so ordered. And another reason why this was not a valid stipulation, why it has to be filed with a plaintiff, is because it was intended to be a 41A2 stipulation. There's a place for it to be so ordered. The Northern District stipulation was so ordered. In the Western District, the judge said, I'm not gonna so order it. If you meant this as an A1, A2, you've done it. I don't have to do anything. That's the end of it. If you mean it as an A2, I can only do that if I review the terms. I haven't done it. I'm not gonna so order it, unlike the Northern District. Thank you very much. Thank you both. Thank you, all three of you. We'll reserve decision in this case.